UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION – BAY CITY

IN RE:

RANDALL L. CHURCH,   Case No. 11-20006-dob
                     Chapter 7 Proceeding
   Debtor            Hon. Daniel S. Opperman

_____/

GARY CALTRIDER,

   Plaintiff,

v.                                  Adv. Proc. No. 11-2067

RANDALL L. CHURCH,

   Defendant

_____/

## Trial Opinion

### Procedural History

On April 4, 2011, Gary Caltrider ("Plaintiff") filed an adversary complaint against Randall Church ("Defendant") to determine the non-dischargeability of a debt under 11 U.S.C. § 523(a)(2)(A) and (a)(4). The Defendant filed an Answer on May 3, 2011. The trial was held on May 31, 2012. On June 1, 2012, the Court entered an Order Setting Deadlines to File Post-Hearing Briefs. The parties filed the required post-hearing briefs and the matter was taken under advisement.

### Findings of Fact

The Plaintiff's 1961 Chevrolet Corvette ("Automobile") was damaged in a roadway accident. On October 24, 2008, Charles Torrisian, acting as an agent for the Plaintiff, delivered the Automobile to the Defendant for repair and restoration. Mr. Torrisian was referred to the

1

Defendant by an industry adjustor. The Plaintiff and the Defendant entered into a contract under which the Defendant agreed to repair the collision damages to the Automobile. The Plaintiff signed a document stating: "I Gary Caltrider give permission to Randy Church Restoration Shop to repair my 1961 Corvette." Under the agreement, the Defendant was to complete the repair within approximately one year. That agreement was later orally changed to include a restoration of the Automobile in addition to the collision repairs and to include a cap cost for labor and materials of $115,000.00 to restore the vehicle and repair the collision damages.

The Defendant's facility was registered through the Michigan Department of State as a motor vehicle repair facility at the time the Automobile was delivered and the agreement was made and it remained registered until November 6, 2009. The Defendant inadvertently failed to submit the necessary documents to renew the registration and the registration lapsed on November 6, 2009. The Defendant renewed the registration at some point in 2011.

The Defendant had possession of the Automobile from October 24, 2008, until December 1, 2010. During that time period, the Plaintiff paid the following amounts to the Defendant, totaling $95,000.00:

(1) $25,000.00 on December 11, 2008;
(2) $10,000.00 on May 6, 2009;
(3) $10,000.00 on June 23, 2009;
(4) $10,000.00 on September 3, 2009;
(5) $10,000.00 on November 6, 2009;
(6) $10,000.00 on November 18, 2009;
(7) $10,000.00 on January 7, 2010; and
(8) $10,000.00 on April 28, 2010.

After receiving the last $10,000.00 payment, the Defendant requested additional payments from the Plaintiff. Citing the delays in the finishing of the automobile, the Plaintiff refused to make additional payments and, on December 1, 2010, the Plaintiff obtained a state court order

directing the Defendant to return the Automobile and all of its parts and components to the Plaintiff. That order provided, in part:

> IT IS FURTHER ORDERED AND ADJUDGED that Defendant, Randall Church d/b/a Randy Church Restorations, his agents, whether acting alone or in concert with others, is enjoined from damaging, destroying, concealing, disposing of, or using the Automobile and/or its components, including all records receipts, and other memorandum associated with the Automobile, in Defendant's possession or control, and Defendant Randall Church d/b/a Randy Church Restorations, shall cooperate and assist the Sheriff or Court Officer and make the Car and its components, including all records, receipts, and other memorandum associated with the Car, available for retrieval as ordered herein.

The state court order was served approximately one week later, when, without prior notice to the Defendant, a deputy sheriff, Mr. Torrisian, Michael Mahowski, Fred Mull, and Jamie Gibson arrived at the Randy Church Restoration Shop to retrieve the Automobile and its parts and components. At that time, the Automobile had been restored to what amounted to a "rolling chassis." It took the Defendant a few hours to gather all of the parts and components and put them into ten to twelve boxes. Prior to placing the parts and components into boxes, the Defendant spread the parts and components on the floor and Mr. Torrisian, Mr. Mahowski, and Mr. Mull were given the opportunity to examine them. The Automobile and the boxes of parts and components were transferred to another restoration facility. The Plaintiff paid $62,842.45 for additional repairs and restoration work after the Defendant turned the vehicle over to Plaintiff.

<u>Jurisdiction</u>

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) (determinations as to the dischargeability of particular debts).

Discussion

11 U.S.C. § 523(a)(2)(A)

Under section 727 of the Bankruptcy Code, a debtor may obtain a general discharge from all debts that arose before the order for relief. 11 U.S.C. § 727(b). However, there are exceptions for certain obligations, including debts for money obtained by fraud. 11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(A) provides:

> (a) A discharge under section 727 . . . does not discharge an individual debtor from any debt –
>
> > (2) for money, property,[1] services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
> >
> > > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

To prevail on a claim under 523(a)(2)(A), a plaintiff must show that:

> (1) [T]he debtor obtained money through a material misrepresentation that at the time the debtor knew was false or that he made with reckless disregard for the truth; (2) the debtor intended to deceive; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert),* 141 F.3d 277, 280 (6th Cir. 1998). Whether a debtor possessed intent to deceive is measured by a subjective standard. *Id.*

The purpose of section 523(a)(2) is to prevent debtors from retaining the benefits of property obtained through fraud. *In re Omegas Group, Inc.*, 16 F.3d 1443, 1451 (6th Cir. 1994). Plaintiff must show each element by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286 (1991). Even so, the court must construe all of the exceptions to discharge strictly, and must give the benefit of the doubt to debtor. *Rembert,* 141 F.3d at 281.

---

[1] The term "property" as used in section 523(a)(2)(A) "denotes something subject to ownership, transfer, or exclusive possession and enjoyment, which may be brought within the dominion and control of a court through some recognized process." *Gleason v. Thaw,* 236 U.S. 558 (1915).

4

Intent, under *Rembert*, is measured subjectively. 141 F.3d at 281. A debtor intends to deceive a creditor "when the debtor makes a false representation which the debtor knows or should have known would induce another to advance goods or services to the debtor." *Bernard Lumber Co. v. Patrick (In re Patrick)*, 265 B.R. 913, 916 (Bankr. N.D. Ohio 2001). "Fraudulent intent requires an actual intent to mislead, which is more than mere negligence. . . . A 'dumb but honest' [debtor] does not satisfy the test." *Palmacci v. Umpierrez*, 121 F.3d 781, 788, (1st Cir. 1997) (citations omitted). A debtor's fraudulent intent

> may be inferred from the totality of the circumstances. The bankruptcy court must consider whether the totality of the circumstances' presents a picture of deceptive conduct by the debtor which indicates an intent to deceive the creditor.' The court may consider not only the debtor's conduct at the time of the representations, but may consider subsequent conduct, to the extent that it provides an indication of the debtor's state of mind at the time of the actionable representations.

*Wolf v. McGuire (In re McGuire)*, 284 B.R. 481, 492 (Bankr. D. Col. 2002)(quoting *Groetken v. Davis (In re Davis)*, 246 B.R. 646, 652 (10th Cir. BAP 2000)(citations omitted). "A creditor can present proof of surrounding circumstances from which a [c]ourt can infer a dishonest intent." *McCoy,* 299 B.R. at 199.

As explained by the court in *Haney v. Copeland (In re Copeland)*, 291 B.R. 740 (Bankr. E.D. Tenn. 2003):

> Proving the Debtor's intent to defraud is similar to proving the Debtor's knowledge and/or recklessness as to the falsity of the representations made. Because intent is a purely subjective question, the court must examine the totality of the Debtor's actions to determine if she possessed the requisite intent to deceive the Plaintiffs. Any benefit of the doubt must be resolved in favor of the Debtor, as § 523(a)(2) is strictly construed in her favor. *XL/Datacomp, Inc. v. Wilson (in re Omegas Group, Inc.)*, 16 F.3d 1443, 1452 (6th Cir. 1994).

*Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 760 (Bankr. E.D. Tenn. 2003).

The Plaintiff first argues that the Defendant made false representations regarding how long the repair and restoration would take and how much progress was being made on the repair

and restoration. The Defendant argues that there was no agreed upon period of time under which Defendant had to complete the contract and that he would have finished the repair and restoration for the agreed upon contract price if the Plaintiff had not unilaterally terminated the contract and sought turnover of the Automobile.

The main issue here is whether the Defendant made any material misrepresentations to the Plaintiff. The Court concludes that the Plaintiff failed to meet his burden of proof regarding non-dischargeability under § 523(a)(2)(A). It is clear that the Plaintiff and the Defendant originally entered into a contract under which the Defendant agreed to repair the collision damages to the Automobile. The Plaintiff signed a document stating: "I Gary Caltrider give permission to Randy Church Restoration Shop to repair my 1961 Corvette." At that time, the parties agreed that the Defendant would complete the repairs within approximately one year. That agreement was later orally changed to include a restoration of the Automobile in addition to the collision repairs and to include a cap cost for labor and materials of $115,000.00 to restore the vehicle and repair the collision damages. It is unclear whether the Plaintiff and the Defendant orally agreed to any time frame in which the repairs and restoration work would be completed.

At the trial, Fred Mull from Drayton Motors testified that it would take anywhere from one to three years to complete a restoration of a Corvette. Mr. Mull testified that approximately 45-50% of the repair and restoration work had been completed at the time the Automobile was turned over to the Plaintiff. The Defendant testified that he had completed approximately 80% of the repair and restoration work at the time the Automobile was turned over to the Plaintiff and that he only had to do some basic assembly of the Automobile to complete the contract. The unrebutted testimony of the Defendant is that he would have repaired and restored the

Automobile for the $20,000.00 that remained owing on the contract. After the Defendant turned the Automobile over to the Plaintiff, the Plaintiff paid $62,842.45 for another repair facility to finish the repairs and restoration job.

It is unclear whether there was any agreed upon completion date for the Defendant to complete the repairs and restoration after the agreement was orally modified and the Plaintiff failed to prove that the Defendant made any representation regarding the progress made on the repairs and restoration work. Furthermore, if any such representations were made, the Plaintiff has failed to prove, by a preponderance of the evidence, that the Defendant made those representations with the intent to deceive Plaintiff. The Defendant credibly testified that he would have finished the contract for the agreed upon contract price. Therefore, the Plaintiff's first argument fails.

The Plaintiff's second argument is that the debt owed to him should be held non-dischargeable pursuant to § 523(a)(2)(A) because Defendant violated the Michigan Motor Vehicle Service and Repair Act ("MVSRA"), Mich. Comp. Laws § 257.1301, *et seq.*, by making misrepresentations and by continuing to collect payments from the Plaintiff after his repair shop's registration lapsed.

The MVSRA regulates the practice of servicing and repairing motor vehicles, proscribes unfair and deceptive practices, provides for training and certification of mechanics, provides for the registration of motor vehicle repair facilities, provides for enforcement, and prescribes penalties. It is undisputed that Mr. Church is a motor vehicle mechanic as defined by the MVSRA.

The Plaintiff cites two specific sections of the MVSRA in support of his argument: (1) M.C.L. 257.1307, which provides that a "person subject to this act shall not engage or attempt to

engage in a method, act, or practice which is unfair or deceptive"; and (2) M.C.L. 257.1331, which entitles a customer to recover any payments made to an "unregistered facility" for the repair of a motor vehicle.

The Plaintiff's argument under M.C.L. 257.1307 must fail because the Plaintiff has not proved that the Defendant made any misrepresentations regarding how long the repairs and restoration would take to complete or regarding the progress made on the repairs and restoration work. There is no evidence that the Defendant engaged or attempted to engage in any unfair or deceptive method, act, or practice. The only evidence presented was that the Defendant took longer than the Plaintiff expected in making progress on the repairs and restoration.

The Plaintiff's argument under M.C.L. 257.1331 also fails. That section of the MVSRA provides:

> Sec. 31. A person who engages or attempts to engage in the business or trade of a motor vehicle repair or specialty or master mechanic without a registration or certificate, or engages in an act or practice in violation of this act or a rule is barred from bringing or maintaining an action at law or equity on a contract or for the collection of compensation for work performed or materials or parts provided to any other person. In addition, the person is barred from asserting a mechanic's, garageman's, or similar lien upon a motor vehicle, including the repossession of a motor vehicle. A customer is entitled to recover any amount paid to an unregistered facility for the repair of a motor vehicle belonging to that customer.

It is undisputed that the Defendant's repair facility was a registered vehicle repair facility at the time the Plaintiff entered into the original agreement with the Defendant for the repair of the collision damage to the Automobile and at the time the Plaintiff and Defendant orally modified that agreement to include a complete restoration of the Automobile. The repair facility remained registered until November 6, 2009, when the registration lapsed due to the Defendant's failure to renew it. After the registration lapsed, the Plaintiff paid an additional $40,000.00 to Defendant. It is clear that the Defendant violated M.C.L. 257.1331 by continuing to collect

8

payments from the Plaintiff while the repair shop was not registered. However, a violation of the MVSRA does not necessarily mean that the debt resulting from that violation is a non-dischargeable debt under § 523(a)(2)(A).

In this case, the Plaintiff did not present any evidence that the Defendant made any representations whatsoever regarding his status as a registered repair facility. In fact, at the time the agreement was made, Defendant's repair facility was in fact registered. Moreover, the Plaintiff has failed to prove that he relied on any representations, if there in fact were any, regarding the repair facility's being registered. Mr. Torrisian testified that he was referred to the Defendant by an industry adjustor and that he looked over some of Defendant's work at his repair facility and was impressed by the quality of the workmanship. Mr. Torrisian testified that he, as the Plaintiff's agent, made the decision to have the Defendant complete the repair work after seeing the Defendant's work. The Plaintiff failed to meet his burden of proof and, therefore, the Court concludes that the Plaintiff's claim under § 523(a)(2)(A) must be dismissed.

<u>11 U.S.C. § 523(a)(4)</u>

Under 11 U.S.C. §523(a)(4), a debt will be determined nondischargeable if it is a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." In cases involving "fraud or defalcation", the Sixth Circuit has adopted a narrow definition of the requirement that the Debtor act in a "fiduciary capacity". The term "fiduciary capacity" as defined by the Sixth Circuit in *R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176, 179 (6th Cir. 1997), "implies the existence of an express or technical trust relationship," requiring that "the debtor must hold funds in trust for a third party to satisfy the fiduciary relationship element of the defalcation provision of § 523(a)(4)."

9

The burden is on the plaintiff creditor to prove by a preponderance of the evidence that the debt should be excepted from discharge under Section 523(a)(4), and thus the creditor has the burden of proving the debtor is a "fiduciary." *See Grogan v. Garner*, 498 U.S. 279 (1991); *Meyers v. IRS* (*In re Meyers*), 196 F.3d 622 (6th Cir. 1999).

In contrast to "fraud or defalcation," neither embezzlement nor larceny are conditioned upon the existence of an action taken in a "fiduciary capacity," and for Section 523(a)(4) purposes, federal common law, rather than state law, controls the meaning of these terms. *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172-73 (6th Cir. 1996). Federal common law defines embezzlement as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Id*. Larceny is different in that the original taking must have been unlawful, and is defined as "the fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's use without the consent of the owner." *Graffice v. Grim (In re Grim)*, 293 B.R. 156, 166 (Bankr. N.D. Ohio 2003).

As noted, the Plaintiff argues that the debt owed to him should be deemed non-dischargeable pursuant to 11 U.S.C. § 523(a)(4) because the Defendant embezzled numerous parts and components that should have been turned over to Plaintiff. The Defendant argues that he believed that he had returned all of the parts and components to the Plaintiff and that the Plaintiff did not contact him at any time requesting the return of any missing parts or components.

At the trial, the Plaintiff provided a list of parts that needed to be obtained in order to complete the repairs and restoration after the Defendant turned over the Automobile and the parts and components in December 2010. However, the testimony given at trial was that some of the

parts on that list, if they had been provided by the Defendant, would have needed to be replaced regardless of the Defendant's actions. For example, there were numerous parts and components that would have needed to be replaced either because they were damaged in the collision or because they were of the type that would ordinarily be replaced during a full restoration due to wear and tear. Also, certain wrecked and damaged parts were not returned by the Defendant to the Plaintiff because they were no longer able to be used.

The Defendant testified that the Plaintiff's representatives who picked up the Automobile in December 2010 were satisfied that all of the parts and components were present. When the Plaintiff's representatives arrived at his repair facility unannounced, it took the Defendants a few hours to gather all of the parts and components and put them into ten to twelve boxes. Prior to placing the parts and components into boxes, the Defendant spread the parts and components on the floor and the Plaintiff's representatives were given the opportunity to examine them. Mr. Mahowski testified that the Defendant served as a gatekeeper and that he rejected numerous parts that he believed belonged to the Automobile. It is unclear whether those parts could have belonged to other automobiles. As noted, the Defendant credibly testified that he was unaware that any parts were missing and that he was never informed that any parts or components were missing.

One part that Plaintiff took specific interest in was an inoperable steering column that had been returned with the Automobile. Mr. Torrisian testified that this steering column had been inoperable for more than ten years and that the steering column was missing its vehicle identification number. The Defendant testified that he was unaware that the steering column that was returned did not belong to the Automobile, that the trial testimony was the first he had heard about this issue, and that he would look for the correct steering column in his shop. The Plaintiff

11

11-02067-dob    Doc 47    Filed 11/21/12    Entered 11/21/12 11:28:42    Page 11 of 12

also specifically noted that the grid that holds the radiator was missing. That part was clearly present in a number of photographs taken by the Defendant, but that part was not turned over to the Plaintiff. The Defendant testified that he believed all of the parts were returned with the Automobile and he has no explanation as to why the Plaintiff does not have the grid.

The Court concludes that the Plaintiff has failed to meet his burden of proof. The Defendant credibly testified that he believed he had returned all of the parts and that he was never contacted regarding any missing parts. It is unclear which parts and components were unable to be used in the repair and restoration due to damage from the collision or due to wear and tear. Even if one or two parts were actually missing, the Plaintiff has failed to establish that the Defendant fraudulently appropriated any parts and components belonging to him, and therefore, Plaintiff's claim under 11 U.S.C. §523(a)(4) must be dismissed.

<u>Conclusion</u>

After carefully reviewing the record and the testimonial evidence, weighing all of the evidence, and considering the circumstances of the case, the Court holds that the Plaintiff did not meet his burden to prove that the alleged debt is non-dischargeable under §§ 523(a)(2)(A) or (4). Counsel for the Defendant shall submit an order dismissing the Plaintiff's complaint for the reason set forth in this opinion.

Not for publication

.

**Signed on November 21, 2012**

                                        **/s/ Daniel S. Opperman**
                                        **Daniel S. Opperman**
                                        **United States Bankruptcy Judge**